IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. _____ |
| ) | |
| SOUTHEASTERN CAR WASH SYSTEMS, ) | |
| MILLER ELECTRIC, INC., ) | |
| THERESA EVANS, individually and ) | |
| d/b/a ISLAND OASIS, ) | |
| AND D'ALTON PROPERTIES, LLC, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Comes now Plaintiff Auto-Owners Insurance Company ("Auto-Owners"), by and through counsel, and for its Complaint for Declaratory Judgment, states as follows:

1. Auto-Owners is a Michigan corporation licensed to transact business in the state of Tennessee. Auto-Owners' principal place of business is located in Lansing, Michigan.

2. Defendant Southeastern Car Wash Systems ("Southeastern") is a citizen and resident of Stewart County, Tennessee. It has its principal place of business in Dover, Tennessee. It is an unincorporated business organization. It may be served with process and a copy of this Complaint for Declaratory Judgment through service on its managing agent or representative Martin E. Miller, Sr., at 135 Beech Street, Dover, Tennessee 37058-3402.

3. Defendant Miller Electric, Inc., ("Miller Electric") is a Tennessee corporation with its principal place of business in Dover, Stewart County, Tennessee. It may be served with process and a copy of this Complaint for Declaratory Judgment through service upon its registered agent Martin E. Miller, Sr., at 135 Beech Street, Dover, Tennessee 37058-3402.

4. Defendant Theresa Evans, individually and d/b/a Island Oasis ("Evans") is a citizen and resident of Bradley County, Tennessee. She may be served with process and a copy of this Complaint for Declaratory Judgment at 540 Inman Street West, Cleveland, Tennessee 37311-1767.

5. Defendant D'Alton Properties, LLC ("D'Alton") is an expired and dissolved Tennessee limited liability company. Upon information and belief, its sole member, Theresa Evans, is a citizen and resident of Tennessee. Upon information and belief, it may be served with process and a copy of this Complaint for Declaratory Judgment through its registered agent Theresa Evans at 540 Inman Street West, Cleveland, Tennessee 37311-1767.

## I. JURISDICTION AND VENUE

6. This action is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29-14-101 *et seq*.

7. Auto-Owners seeks a declaratory judgment concerning its rights and obligations under a policy of insurance issued to Miller Electric.

8. This action concerns an actual case and controversy over whether Auto-Owners has a duty to defend or indemnify Southeastern pursuant to a policy of insurance issued to Miller Electric.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) & 1391(b)(2) as Evans and D'Alton reside in the Eastern District of Tennessee and all Defendants are residents and citizens of the State of Tennessee. A substantial part of the events or omissions giving rise to this claim occurred in the Eastern District of Tennessee.

10. This Court has personal jurisdiction over all Defendants as all Defendants are either found in the Eastern District of Tennessee or have allegedly committed torts and/or

2

3313947.3
Case 1:15-cv-00212-CLC-CHS   Document 1   Filed 08/17/15   Page 2 of 20   PageID #: 2

breached contracts in the Eastern District of Tennessee. All of the Defendants are Tennessee citizens and residents.

11. The underlying state court action filed by Evans and D'Alton (henceforth the "Underlying Plaintiffs") alleges that Southeastern breached a contract and committed negligence in Bradley County, Tennessee. *See* 28 U.S.C. §1391(b)(2).

12. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) in that there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

13. Plaintiff is a citizen and resident of Michigan. Defendants are citizens and residents of Tennessee. As a result, complete diversity of citizenship exists.

14. In this declaratory judgment action, Auto-Owners seeks a declaration that it has no duty to defend Southeastern in a lawsuit brought against it by the Underlying Plaintiffs.

15. In this declaration judgment action, Auto-Owners seeks a declaration that it has no duty to indemnify Southeastern for any judgment that may be entered against it in the lawsuit brought against it by the Underlying Plaintiffs.

16. In this declaratory judgment action, Auto-Owners seeks a declaration that the insurance policy issued by Auto-Owners to Miller Electric does not provide coverage for the claims made by the Underlying Plaintiffs in their state court lawsuit against Southeastern.

17. The underlying state court lawsuit is styled *Theresa Evans, Theresa Evans d/b/a Island Oasis, and D'Alton Properties, LLC v. Southeastern Car Wash Systems and D & S Car Wash Equipment Company, and John Does,* Bradley County Circuit Court, No. V-15-287 ("the

Action"). A copy of the complaint filed in the Action is attached hereto as ***Exhibit 1*** and is incorporated by reference into this Complaint for Declaratory Judgment.

18.  The complaint filed in the Action does not contain a specific *ad damnum* clause in the prayer for relief.

19.  Paragraph 29 of the complaint filed in the Action alleges that the Underlying Plaintiffs had been damaged in the amounts of $197,290.63 and over $100,000.00 for breach of contract. *See **Exhibit 1**,* ¶ 29.

20.  Paragraph 33 of the complaint filed in the Action alleges that the Underlying Plaintiffs have lost over $300,000.00 in damages due to the alleged negligence and/or recklessness of the defendants in the Action. *See **Exhibit 1**,* ¶ 33.

21.  Paragraph 34 of the complaint filed in the Action demands compensation for payments that the Underlying Plaintiffs allege they have been forced to pay for personal property damage in the amount of $300,000.00 plus rescission of the contract and the amounts they have had to pay for the same. *See **Exhibit 1**,* ¶ 34.

22.  Paragraph 42 of the complaint filed in the Action alleges that the Underlying Plaintiffs have had to pay $1,100.01 for adjustments to the car wash on March 24, 2014, $601.06 for adjustments to the car wash on July 9, 2014, and $561.33 for adjustments to the car wash on October 1, 2014. *See **Exhibit 1**,* ¶ 42.

23.  Paragraph 43 of the complaint filed in the Action alleges that Celina Insurance Group billed and collected from the Underlying Plaintiffs $500.00 for the deductible for repair of an automobile damaged by the car wash on or about August 14, 2014. *See **Exhibit 1**,* ¶ 43.

4

3313947.3
Case 1:15-cv-00212-CLC-CHS   Document 1   Filed 08/17/15   Page 4 of 20   PageID #: 4

24. Based on the allegations contained in the complaint filed in the Action, the amount in controversy in this declaratory judgment action is, at a minimum, in excess of $597,290.63.

25. The policy limit for each occurrence under the commercial general liability coverage in the insurance policy issued by Auto-Owners is $1,000,000.00. This policy limit exceeds the amount in controversy requirement of $75,000.00 necessary for this Court to exercise jurisdiction over this matter.

26. The amount in controversy in this declaratory judgment action exceeds the sum or value of $75,000.00 exclusive of interest and costs.

## II. SPECIFIC ALLEGATIONS

27. The insurance policy issued by Auto-Owners to Miller Electric, Inc. is a tailored protection policy that includes commercial general liability coverage (the "Policy").

28. The policy number for the Policy is 102319-03494276-14.

29. The Policy was issued to Miller Electric at 135 Beech Street, Dover, Tennessee 37058-3402.

30. The Policy has an effective date of July 23, 2014 to July 23, 2015.

31. A certified copy of the Policy is attached hereto as ***Exhibit 2*** and it is incorporated herein by reference into this Complaint for Declaratory Judgment.

32. The Policy contains the following language as part of the insuring agreement:

**COMMERCIAL GENERAL LIABILITY PLUS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

10. **NEWLY FORMED OR ACQUIRED ORGANIZATION**

5

Under **SECTION II – WHO IS AN INSURED**, Paragraph **4**. is deleted and replaced by the following:

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II – Who Is An Insured**.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V – Definitions**.

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

6

3313947.3
Case 1:15-cv-00212-CLC-CHS   Document 1   Filed 08/17/15   Page 6 of 20   PageID #: 6

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2. Exclusions**

This insurance does not apply to:

**j.** **Damage To Property**

"Property Damage" to:

**(5)** Personal property in the care, custody or control of, or over which physical control is being exercised for any purpose by any insured;

**(6)** That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(7)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(2)**, **(4)** and **(5)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraphs **(4)**, **(5)**, **(6)** and **(7)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(7)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**SECTION V – DEFINITIONS**

**14.** "Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

8

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

- **b.** Does not include "bodily injury" or "property damage" arising out of:

    - **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    - **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    - **(3)** Products or operations for which the classification, shown in the Declarations, states that products-completed operations are included.

**18.** "Property damage" means:

- **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- **b.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**26.** "Your product":

- **a.** Means:

    - **(1)** any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        - **(a)** You;

        - **(b)** Others trading under your name; or

        - **(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**27.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

**COMMON POLICY CONDITIONS**

All Coverage Parts included in this policy are subject to the following conditions.

**F.** **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

33. This declaratory judgment action arises out of the Action filed in Bradley County, Tennessee, Circuit Court, and upon information and belief, the Underlying Plaintiffs filed the Action on or about April 14, 2015.

10

34. The complaint filed in the Action alleges that the Underlying Plaintiffs owned a service station and car wash known as Island Oasis off of Inman Road in Cleveland, Tennessee. *See **Exhibit 1***, ¶ 6.

35. The complaint filed in the Action alleges that the Underlying Plaintiffs contracted with Southeastern on or about June 7, 2012, to have a fully functioning car wash installed on the Inman Road premises. *See **Exhibit 1***, ¶ 7.

36. The complaint filed in the Action alleges that over the course of the past two and one half years the IQ Soft Touch In Bay Automatic sold and installed by Southeastern has malfunctioned, causing serious property damage to vehicles inside the wash. *See **Exhibit 1***, ¶ 9.

37. The complaint filed in the Action alleges that in 2014 Southeastern began refusing to repair the car wash. *See **Exhibit 1***, ¶ 10.

38. The complaint filed in the Action alleges that upon information and belief Southeastern discovered that the wiring had been hooked up insufficiently, however, it had no one with the appropriate expertise to hook up the wiring properly. *See **Exhibit 1***, ¶ 11.

39. The complaint filed in the Action alleges that Evans hired an independent engineering firm known as Masa Associates, Inc. ("Masa"), to investigate the car wash. *See **Exhibit 1***, ¶ 12.

40. The complaint filed in the Action alleges that Masa rendered a report dated December 4, 2014 regarding the car wash that identified two particular issues. *See **Exhibit 1***, ¶¶ 13-14.

41. The complaint filed in the Action alleges that the first issue identified by Masa was that the car wash was coming off of its tracks. *See **Exhibit 1***, ¶ 15.

42. The complaint filed in the Action alleges that the second issue identified by Masa was that the top brush was being driven down into vehicles causing damage. *See **Exhibit 1***, ¶ 16.

43. The complaint filed in the Action alleges that it was the opinion of Masa that the top brush issue was hardware related and that the most plausible scenario is that, either during one of the episodes when the system came off the track or while it was being pushed back on the track, one of the sensors that scans vehicles became misaligned or damaged. *See **Exhibit 1***, ¶ 17.

44. The complaint filed in the Action alleges that Masa believes that the manufacturer should run test scenarios to evaluate the data received from all the sensors and recalibrate the system. *See **Exhibit 1***, ¶ 18.

45. The complaint filed in the Action alleges that there needs to be intermittent checks on the calibration of the system to insure that it is proper, and this allegedly has not been done. *See **Exhibit 1***, ¶ 19.

46. The complaint filed in the Action alleges that the structure should also be checked to verify that it is within the manufacturer's recommended tolerances, and this allegedly has not been done. *See **Exhibit 1***, ¶ 20.

47. The complaint filed in the Action alleges that the Underlying Plaintiffs have lost revenue to be determined through the proof in the Action. *See **Exhibit 1***, ¶ 21.

48. The complaint filed in the Action alleges that the contract upon which the Action is based was made and was to be performed in Bradley County, Tennessee. *See **Exhibit 1***, ¶ 23.

49. The complaint filed in the Action alleges that on or about June 7, 2012, the Underlying Plaintiffs and defendants in the Action entered into a written contract whereby Southeastern agreed to sell to plaintiffs an IQ Soft Touch Automatic Base Package and Ancillary Package for $197,290.63. *See **Exhibit 1***, ¶ 24.

50. The complaint filed in the Action alleges that the Underlying Plaintiffs have performed all the conditions, covenants, and promises required by it to be performed in accordance with the terms and conditions of the contract. *See **Exhibit 1***, ¶ 25.

51. The complaint filed in the Action alleges that the defendants in the Action breached the written contract with the Underlying Plaintiffs by failing and refusing to perform in good faith their promise to adequately provide and repair the IQ Soft Touch Automatic Base Package and Ancillary Package together with any other items or components required to cause the car wash to operate properly. *See **Exhibit 1***, ¶ 26.

52. The complaint filed in the Action alleges the breach of contract has cost the Underlying Plaintiffs over $100,000.00 in repair of vehicles damaged by the car wash and the loss of use of the car wash during down times. *See **Exhibit 1***, ¶ 27.

53. The complaint filed in the Action alleges that as a result of the breach of the contract by the defendants in the Action, the Underlying Plaintiffs should be placed in a position which they had been had the breach not occurred. *See **Exhibit 1***, ¶ 28.

54. The complaint filed in the Action alleges that the Underlying Plaintiffs have been damaged in the amount of $197,290.63 and an additional $100,000.00 plus interest at the legal rate from the first known breach. *See **Exhibit 1***, ¶ 29.

55. The complaint filed in the Action alleges that due to the negligence and/or recklessness of the defendants in the Action, the Underlying Plaintiffs have lost over $300,000.00 in damages. *See **Exhibit 1***, ¶ 33.

56. The complaint filed in the Action demands compensation for the Underlying Plaintiffs for the payments they have been forced to pay for personal property damage in the

13

amount of $300,000.00 plus rescission of the contract and the amounts they have had to pay for the same.

57. The complaint filed in the Action alleges that the equipment of the car wash began coming off the rails on or about December 22, 2012, and that this is an ongoing problem that continues to happen. *See Exhibit 1*, ¶ 36.

58. The complaint filed in the Action alleges that the car wash has been down and out of order an average of seven to ten days per month since its installation in 2012. *See Exhibit 1*, ¶ 37.

59. The complaint filed in the Action alleges in paragraphs 38, 39, 40, and 41 the various dates on which the car wash opened and its rates of sales as well as the number of cars that have gone through the car wash during the various months since the car wash has been open. *See Exhibit 1*, ¶¶ 38-41.

60. The complaint filed in the Action alleges that Southeastern has, without actually repairing the car wash, invoiced the Underlying Plaintiffs $1,100.01 for adjustments to the car wash on March 24, 2014, $601.06 for adjustments on the car wash on July 9, 2014, and $561.33 for adjustments to the car wash on October 1, 2014. *See Exhibit 1*, ¶ 42.

61. The complaint filed in the Action alleges that on August 14, 2014 Celina Insurance Group billed and collected from the Underlying Plaintiffs $500.00 for the deductible for repair of an automobile damaged by the car wash. *See Exhibit 1*, ¶ 43.

62. In the prayer for relief in the complaint filed in the Action, the Underlying Plaintiffs seek to have the court determine that the defendants in the Action have breached their contract and have caused injury to personal property, that a jury decide all issues, that the Underlying Plaintiffs be compensated for damages to vehicles that they have been forced to pay,

14

and that the Underlying Plaintiffs be awarded an amount sufficient to fix the car wash. The prayer for relief seeks in the alternative that the Underlying Plaintiffs be entitled to rescission of the contract with Southeastern. *See* **Exhibit 1**, Prayer for Relief.

63. Defendant Southeastern requested that Auto-Owners provide a defense to it in the Action.

64. Auto-Owners agreed to provide defendant Southeastern with a defense in the Action subject to a reservation of rights, which included the right to file a declaratory judgment action to determine whether coverage existed under the Policy for the claims in the Action.

65. The claims brought by the underlying plaintiffs against Southeastern in the Action are not within the scope of coverage of the Policy.

66. Miller Electric applied for the Policy on or about July 23, 2010.

67. The name of Southeastern does not appear on the commercial insurance application made by Miller Electric.

68. According to Southeastern's website, Southeastern Car Wash Systems was formed in September of 2010.

69. Southeastern is a business organization that was formed after the application for the Policy was made and after the initial term of the Policy commenced in July of 2010.

70. Southeastern has a separate identity as a separate business from Miller Electric.

71. Southeastern has its own website.

72. The contract at issue in the Action is in the name of Southeastern alone.

73. Southeastern issues its own invoices that do not mention the name Miller Electric.

74. Employees of Southeastern use email addresses with the name secarwash.com.

75. The signatory for Southeastern on the contract with the Underlying Plaintiffs, Martin Miller Sr., signed as a representative of Southeastern. He did not sign the contract in any capacity with Miller Electric.

76. Southeastern has its own assets in the form of receivables owed to it as evidenced by the invoices that it sends out in its name alone.

77. Southeastern performs services and sells products in the name of Southeastern instead of Miller Electric.

78. Southeastern is an organization.

79. Because Southeastern is a separate organization from Miller Electric, the Policy only provides coverage for Southeastern for 180 days after the organization was formed.

80. According to its own website, Southeastern was formed in September of 2010, as a result any coverage under the Policy for Southeastern expired by the end of March 2011.

81. As a result, the Policy does not provide coverage for the claims in the Action brought against Southeastern.

82. Alternatively, in the event that Southeastern is deemed to be an insured under the Policy, the Policy contains exclusions that bar coverage for Southeastern for the claims made in the Action.

83. The claims in the Action allege that property damage occurred to the work performed by Southeastern in installing the car wash. Damage to Southeastern's own work is excluded by the "Your Work" exclusion contained in the Policy.

84. The claims in the Action allege damage to the product sold, distributed, or handled by Southeastern. The "Your Product" exclusion in the Policy excludes coverage for property damage to the product that Southeastern sold to the Underlying Plaintiffs.

3313947.3

85. The claims in the Action allege that the Underlying Plaintiffs incurred lost profits and economic loss as a result of problems with the car wash.

86. These claims are not claims for property damage or bodily injury, but instead are claims for economic loss or lost profits. As a result, the Policy does not provide coverage for such claims as the Policy only provides coverage for bodily injury or property damage.

87. The claims in the Action seek to recover for damages paid to owners of cars that were damaged by the car wash. These claims are for recovery of economic loss allegedly suffered by the Underlying Plaintiffs and are not claims for physical injury to tangible property belonging to the Underlying Plaintiffs. As a result, these claims do not meet the definition of property damage used in the Policy.

88. The Policy does not provide coverage for property damage to personal property in the care, custody, or control of, or over which physical control is being exercised for any purpose by any insured.

89. To the extent the claims in the Action are claims for damage to personal property in the form of the vehicles of car wash customers and to the extent the Underlying Plaintiffs are alleging that Southeastern had control over those vehicles when they were in the car wash, the Policy excludes coverage for such claims.

90. The business risk exclusions in the Policy, Exclusions 2.(j.)(6) and 2.(j.)(7), exclude coverage for the claims made in the Action against Southeastern.

91. The business risk exclusions in the Policy exclude coverage for property damage to the particular part of real property on which Southeastern or its contractors or subcontractors are working directly or indirectly, if the property damage arises out of operations performed by Southeastern or its contractors or subcontractors.

17

92. The business risk exclusions exclude coverage for property damage to the particular part of any property that must be restored, repaired, or replaced because Southeastern's work was incorrectly performed on it.

93. The claims in the Action for costs, interest, and attorneys fees are not covered by the Policy because such claims do not satisfy the definition of property damage as that term is defined in the Policy.

94. The Policy does not provide coverage for the claims made in the Action against Southeastern, including the damage claims for interest, attorneys fees and other costs.

95. The Policy does not permit Miller Electric to transfer its rights under the Policy to Southeastern without written consent from Auto-Owners.

96. As a result, the Policy does not provide coverage for the claims brought against Southeastern in the Action.

97. Auto-Owners does not have a duty under the Policy to defend Southeastern in the Action.

98. Auto-Owners does not have a duty under the Policy to indemnify Southeastern for any judgment entered against it in the Action.

99. The terms of the Policy and the exclusions contained therein exclude coverage for the claims brought against Southeastern in the Action.

100. Southeastern is a proper party to this declaratory judgment action because it is claiming to be an insured under the Policy and this declaratory judgment action will determine whether it has insurance coverage under the policy to provide a defense and/or indemnity for it in the Action.

3313947.3
Case 1:15-cv-00212-CLC-CHS   Document 1   Filed 08/17/15   Page 18 of 20   PageID #: 18

101. Miller Electric is a proper party to this declaratory judgment action because it is the named insured on the Policy, and this declaratory judgment action will determine whether there is insurance coverage to provide any defense or indemnity for Southeastern.

102. Evans is a proper party to this declaratory judgment action because she is a plaintiff in the Action, and this declaratory judgment action will determine whether Auto-Owners has any obligation to indemnify Southeastern for any judgment obtained in the Action.

103. D'Alton is a proper party to this declaratory judgment action because it is a plaintiff in the Action, and this declaratory judgment action will determine whether Auto-Owners has any obligation to indemnify Southeastern for any judgment obtained in the Action.

104. The defendants in this declaratory judgment action are proper parties to this case pursuant to Tenn. Code Ann. § 29-14-107.

105. Neither Auto-Owners nor any of the defendants in this declaratory judgment action have sought, by any other legal action, to have their respective rights under the policy at issue adjudicated under the facts and circumstances presented herein.

WHEREFORE, Auto-Owners prays:

A.  That service of process be issued and served upon the Defendants listed above;

B.  That this Court enter an order declaring that Auto-Owners does not have any duty or obligation to defend Southeastern Car Wash Systems for the claims brought against it in the civil action styled *Theresa Evans, Theresa Evans d/b/a Island Oasis, and D'Alton Properties, LLC v. Southeastern Car Wash Systems and D & S Car Wash Equipment Company, and John Does,* Bradley County Circuit Court No. V-15-287;

C.  That this Court enter an order declaring that Auto-Owners does not have any duty or obligation to indemnify Southeastern Car Wash Systems for any judgment that may be entered

against it in the civil action styled *Theresa Evans, Theresa Evans d/b/a Island Oasis, and D'Alton Properties, LLC v. Southeastern Car Wash Systems and D & S Car Wash Equipment Company, and John Does,* Bradley County Circuit Court No. V-15-287;

D. That the Court enter an order declaring that the Policy does not provide coverage for Southeastern for the claims made against it in the civil action styled *Theresa Evans, Theresa Evans d/b/a Island Oasis, and D'Alton Properties, LLC v. Southeastern Car Wash Systems and D & S Car Wash Equipment Company, and John Does,* Bradley County Circuit Court No. V-15-287; and

E. For such other relief as the Court deems equitable and necessary under the circumstances.

Respectfully submitted this 17th day of August, 2015.

                         WOOLF, McCLANE, BRIGHT,
                           ALLEN & CARPENTER, PLLC

By   *s/*Dean T. Howell
     Howard E. Jarvis, BPR No. 006673
     *jarvish@wmbac.com*

     Dean T. Howell, BPR No. 022130
     *dhowell@wmbac.com*

     April A. Carr, BPR No. 029092
     *acarr@wmbac.com*

     Post Office Box 900
     Knoxville, Tennessee 37901-0900
     (865) 215-1000

     *Attorneys for Plaintiff Auto-Owners Insurance Company*