## IN THE CIRCUIT COURT OF BRADLEY COUNTY, TENNESSEE

THERESA EVANS, THERESA EVANS
d/b/a ISLAND OASIS, and D'ALTON
PROPERTIES LLC,

Plaintiffs,

vs.

SOUTHEASTERN CAR WASH SYSTEMS
and D&S CAR WASH EQUIPMENT COMPANY,
and JOHN DOES,

Defendants.

Case No. V- 15 - 287

JURY DEMAND

## COMPLAINT

COME NOW the Plaintiffs, Theresa Evans, Theresa Evans d/b/a Island Oasis and/or D'Alton

Properties, and for their claim against Southeastern Car Wash Systems, D&S Car Wash Equipment

Company and John Does, present this Complaint to this Honorable Court and state as follows:

### I. PARTIES AND JURISDICTION

1.  Theresa Evans, Theresa Evans d/b/a Island Oasis, and D'Alton Properties are citizens

and residents of Bradley County, Tennessee and/or business entities in Bradley County, Tennessee.

2.  Southeastern Car Wash Systems does business at 135 Beech Street, Dover, TN 37058.

Southeastern Car Wash Systems does business in the State of Tennessee.

3.  D&S Car Wash Equipment Company does business in the State of Tennessee and is

located at 4200 Brandi Lane, High Ridge, MO 63049.



1

4.      The Defendant, D&S Car Wash Equipment Company ("D&S"), does business in the State of Tennessee and is, likewise, subject to suit under the Tennessee Long Arm Statute, T.C.A. Section 20-2-201. Foreign corporations subject to actions.

(a)      Any corporation claiming existence under the laws of the United States or any other state or of any country foreign to the United States, or any business trust found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are by the laws of this state liable to be sued, so far as relates to any transaction had, in whole or in part, within this state or any cause of action arising here, but not otherwise.

(b)      A corporation or trust having any transaction with persons or having any transaction concerning any property situated in this state, through agency whatever acting for it within the state, shall be held to be doing business here within the meaning of this section.

## BACKGROUND INFORMATION

5.      The Plaintiffs reiterate and reallege paragraphs 1 through 4 as if stated verbatim herein.

6.      The Plaintiffs own a Service Station and Car Wash known as Island Oasis off of Inman Road in Cleveland, Tennessee.

7.      The Plaintiffs contracted with Southeastern Car Wash Systems ("Southeastern") on or about June 7, 2012 to have a fully functioning car wash installed on the Inman Road premises.

8.      At all times, it was Plaintiffs' understanding that Defendant D&S Car Wash Equipment Company ("D&S") was the manufacturer of said unit, known as D&S IQ Soft Touch Automatic.

9.      Over the course of the past two and one-half (2 ½) years the IQ Soft-Touch In-Bay Automatic, manufactured by D&S and sold and installed by Southeastern Car Wash Systems has malfunctioned, causing serious property damage to vehicles inside the wash.

10.      In 2014, Southeastern has began refusing to repair the Car Wash.

2

11.     Upon information and belief, Southeastern just discovered that the wiring had been hooked up insufficiently; however, they have no one with the appropriate expertise to hook up the wiring properly.

12.     Theresa Evans hired an independent engineering firm, known as Mesa Associates, Inc., to investigate the car wash.

13.     Mesa Associates, Inc. rendered a report, dated December 4, 2014 regarding said car wash.

14.     Two issues were identified.

15.     First, the car wash was coming off of its tracks.

16.     Second, the top brush was being driven down into vehicles causing damage.

17.     It is Mesa's opinion that the top brush issue is hardware related. The most plausible scenario is that either is that either during one of the episodes when the system came off the track or while it was being pushed back on the track that one of the sensors that scans the vehicles has been misaligned or become damaged.

18.     Mesa believes that the manufacturers should run test scenarios to evaluate the data received from all the sensors and re-calibrate the system.

19.     There needs to be intermittent checks on the calibration of the system to ensure that it is proper. This has not been done.

20.     The structure should also be checked to verify that it is within the manufacturer's recommended tolerances. This has not been done.

21.     The plaintiffs have lost considerable revenue to be set forth below and determined through the proof.

3

## COUNT I – BREACH OF CONTRACT

22. The Plaintiffs reiterate and reallege paragraphs 1 through 21 as if stated verbatim herein.

23. The Contract upon which this action is based was made and to be performed in the County of Bradley, Tennessee.

24. On or about June 7, 2012, plaintiffs and defendants and each of them, entered into a written agreement whereby defendant, Southeastern, agreed to sell to plaintiffs an IQ Soft Touch Automatic Base Package and Ancillary Package for One Hundred Ninety-Seven Thousand Two Hundred Ninety Dollars and 63/100 ($197,290.63).

25. Plaintiffs have performed all of the conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the contract.

26. Defendants, and each of them, breached their written agreement with plaintiff by failing and refusing to perform in good faith their promise to adequately provide and repair the IQ Soft Touch Automatic Base Package and Ancillary Package, together with any other items or components required to cause the car wash to operate properly.

27. The breach of contract has cost plaintiffs over one hundred thousand dollars ($100,000) in the repair of vehicles damaged by the Car Wash and the loss of use of the car wash during down times, as set forth with particularity below.

28. As a result of the breach of the defendants, and each of them, in the obligations pursuant to the written contract are required by law to place the plaintiffs in a position in which they had been had the breach not occurred.

4

29.    Plaintiffs have been damaged in tne amounts of $197,290.63 and over $100,000.00 respectively plus interest at the legal rate from the first known breach .06according to proof.

### COUNT II – INJURY TO PERSONAL PROPERTY

30.    The Plaintiffs reiterate and reallege paragraphs 1 through 29 as if stated verbatim herein.

33.    Due to the negligence and/or recklessness of Defendants, Plaintiffs have lost over three hundred thousand dollars and no/100 ($300,000.00) in damages.

34.    WHEREFORE, Plaintiffs demand compensation for the payments they have been forced to pay for personal property damage in the amount of $300,000.00 plus recission of the contract and the amounts they have had to pay for same.

### COUNT III – SPECIFIC FAILURE LOSS DATA

35.    The Plaintiffs reiterate and reallege paragraphs 1 through 34 as if stated verbatim herein.

36.    The equipment began coming off the rails on or about December 22, 2012. This is an ongoing problem and continues to happen to this day.

37.    Plaintiffs estimate that the car wash has been down and out of order an average of seven (7) to ten (10) days per month since its installation in 2012.

38.    The car wash opened on or about November 15, 2012, with sales of Three Hundred Sixty and 49/100 ($360.49). In December of 2012, sales increased to Seven Hundred Twenty-Two and no/100 ($722.00).

39.    During the year, 2013, the average amount of cars going through the wash, while it was functioning, was 4,564 / 12 or 380.33 per month. During the following months,

5

the number of cars that went through the wash, due to downtime, dipped below the average of 380.33 in the following months:

    a.    January – 351

    b.    June – 286

    c.    July – 276

    d.    August – 350

    e.    November – 235

    f.    December – 179

    40.    During the year, 2014, the average amount of cars going through the wash, while it was functioning, was 3957.00 / 12 or 329 per month. During the following months, the number of cars that went through the wash, due to downtime, dipped below the average of 329 in the following months:

    a.    January – 284

    b.    June – 211

    c.    July – 276

    d.    August – 0

    e.    September – 0

    f.    October - 0

    f.    November – 0

    f.    December – 0

    41.    More specifically, in 2014, the car wash was down completely, with no washes, due to malfunction on the following dates:

    a.    January    1-4, 6-7, 10-11, 17-18, 24-25 and 28.

6

ç®çy

çxO    x☒           ☉α☉  ᒪ<      ?°1▾Çx♥↑?x⌃▲

     b.   February   1, 8, 12, 14-15, 21-22, 24, and 29-31.

     c.   March   1, 7-8, 14-15, 21-22, and 28-29.

     d.   April   4-5, 11-12, 15, 18-19, 25-26 and 31.

     e.   May

     f.   June

     e.   July

     f.   August

     g.   September

     h.   October

     i.   November

     j.   December

(This does not count diminished capacity during other dates).

42.   Without actually repairing the car wash, Southeastern has invoiced Plaintiffs $1,100.01 for adjustments on 3/24/2014, Invoice Number 2428; $601.06 for adjustments on 7/9/2014, Invoice Number 2486; and $561.33 for adjustments on 10/1/14, Invoice Number 5121.

43.   On 8/14/14, Celina Insurance Group billed and collected from the Plaintiffs $500.00 for the deductible for a repair of an automobile damaged by the defective car wash, with a claim number of 15-11718.

7

## PRAYER FOR RELIEF

1.     That this Honorable Court find the following: The Defendants have committed breach of contract and injury to personal property in the State of Tennessee or elsewhere.

2.     That there be a jury convened to decide all issues and complaints cited herein.

3.     That the Plaintiffs be compensated for damages to vehicles that they have been forced to pay.

4.     That the Plaintiffs be awarded an amount sufficient to fix the Car Wash correctly.

5.     In the alternative, that the Plaintiffs be entitled to recision of the contract with Southeastern and compensated for all amounts made under same.

6.     That any court costs arising out of this cause be assessed against the Defendants, either collectively, individually, or joint and several, for which execution may issue.

7.     That the Defendants either collectively, individually or joint and several, be Ordered to pay the Plaintiffs' reasonable attorneys' fees and costs.

8.     That Plaintiffs have such other and further relief as may appear to the Court to be just and proper.

8

Respectfully submitted,

JONES & ASSOCIATES, PLLC

By: _____

KENT T. JONES (BPR #020158)
1-B Paulmar Drive
Chattanooga, TN 37415
Phone: (423) 424-6208
Joneslaw08@gmail.com

STATE OF TENNESSEE, COUNTY OF BRADLEY
I, Joan H. Swanly, Clerk of the Circuit Court of said
County, do hereby certify that the within is a true
copy of the _Complaint_ as same appears
on file in my office.

this 14 April
15
Joan Swenby

9