IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHEASTERN CAR WASH SYSTEMS, | ) | |
| MILLER ELECTRIC, INC., | ) | |
| THERESA EVANS, individually and d/b/a | ) | |
| ISLAND OASIS, | ) | |
| AND D'ALTON PROPERTIES, LLC, | ) | |
| | ) | |
| *Defendants*. | ) | No. 1:15-CV-212 |
| | ) | Judge Collier |
| | ) | Magistrate Judge Steger |
| SOUTHEASTERN CAR WASH SYSTEMS | ) | |
| AND MILLER ELECTRIC, INC., | ) | |
| | ) | |
| *Counterclaim-Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| *Counterclaim-Defendant*. | ) | |

**M E M O R A N D U M**

Plaintiff/Counterclaim-Defendant Auto-Owners Insurance Company ("Auto-Owners") filed this diversity action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, seeking a declaratory judgment that Auto-Owners has no duty to defend or indemnify Defendants/Counterclaim-Plaintiffs Southeastern Car Wash Systems and Miller Electric, Inc. (collectively "Miller")[1] for claims raised against Miller by Defendants Theresa Evans, Island

---

[1] The Court notes Auto-Owners has conceded Southeastern's status as an insured for the purposes of this motion. (Doc. 34 at 13.) The Court will thus refer to both Miller and Southeastern as "Miller."

Oasis, and D'Alton Properties, LLC (collectively "Evans" or the "State Plaintiffs") in a separate state-court action. Miller, conversely, has counter-claimed for a declaration that the insurance policy issued it by Auto-Owners *does* provide coverage for the claims.

Before the Court is Auto-Owners's motion for summary judgment (Doc. 33). Miller has responded to the motion (Doc. 43), and Auto-Owners has replied (Doc. 47). As set forth more fully below, the Court will **DENY** the motion because Auto-Owners has not shown that all of the claims alleged against Miller indisputably fall outside the scope of the Policy.

**I.      Background**

The relevant facts are not in dispute. Miller operates a car-wash distribution and installation business in Eastern Tennessee. At all times relevant to this action, Miller held a commercial general liability insurance policy issued by Auto-Owners (the "Policy"). In 2012, Miller contracted with Evans to install and maintain an "IQ Soft Touch Automatic" car-wash unit, manufactured by D&S Car Wash Equipment Company, at the Island Oasis service station in Cleveland, Tennessee. After installation, the car wash began to malfunction, causing damage both to the unit and to one or more cars that went through the car wash. Although Miller attempted to repair the car wash, it was ultimately unable to do so. As a result of the problems, Evans incurred substantial losses, including damage to the car-wash unit, lost income during the periods the car wash was inoperable, reputational harms, and payments made in compensation for damage to customers' cars.

In April 2015, Evans sued Miller in Bradley County Circuit Court seeking at least $500,000 in damages. Miller, in turn, asked Auto-Owners to provide a defense under the Policy. Auto-Owners agreed to provide a defense, subject to a reservation of rights. In September 2015,

Auto-Owners filed this suit, seeking a declaration that the claims alleged in the underlying lawsuit are not covered by the Policy and that it has no duty to defend or indemnify Miller.

**II.     Standard of Review**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

**III.    Discussion**

Under Tennessee law,[2] the existence of an insurer's duty to defend is a legal question that depends solely on the allegations of the complaint in the underlying action. *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). Resolving this question requires resort to what some courts have called the "eight-corners" rule. *See Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599 (5th Cir. 2006).

> As the name of the rule suggests, only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the underlying claimant. . . . If the four corners of a [complaint] allege facts stating a cause of action which potentially falls within the four corners of the policy's

---

[2] Because the Court is sitting in diversity, the Court must apply the choice-of-law rules of the state in which the Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Tennessee, the law of the place where a contract is made governs the construction and validity of the contract. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973). The insurance contract at issue here appears to have been executed in Tennessee. (*See* Doc. 12 at 11, 12; ¶¶ 6, 13.) Furthermore, all parties have proceeded on the assumption that Tennessee law applies. Accordingly, the Court will apply Tennessee law.

scope of coverage, the insurer has a duty to defend. If all the facts alleged in the underlying [complaint] fall outside the scope of coverage, then there is no duty to defend.

*Id.* at 599–600; *see also Travelers*, 216 S.W. 3d at 305 ("[T]he insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery.") Doubts regarding whether a claim is covered by the policy are resolved in favor of the insured. *Travelers*, 216 S.W.3d at 305.

### A. Claims Against Miller

The Court will begin by identifying the damages alleged against Miller by the State Plaintiffs in the state-court action. The underlying complaint specifically mentions four categories of losses: (1) damages to the car wash (*see* Doc. 31-2 at 4, 6, 8; Underlying Compl. ¶¶ 18, 20, 35, 43); (2) lost income due to loss of use of the car wash (*see id.* ¶¶ 12, 24, 30, 35); (3) reputational harms (*see id.* ¶¶ 12, 35); and (4) sums paid to compensate customers for damage to their vehicles caused by the malfunctioning car wash (*see id.* ¶¶ 12, 30, 35, 44). If even one of these claims is potentially covered by the terms of the Policy, Auto-Owners's motion for summary judgment must be denied. *See Travelers*, 216 S.W.3d at 305.

### B. The Policy

Next, the Court must determine the scope of coverage provided by the Policy. The policy at issue is a standard-form commercial general liability policy (a "CGL").

> CGLs are designed to protect an insured against certain losses arising out of business operations. These policies have been used since 1940. Most CGLs are written on standardized forms developed by an association of domestic property and casualty insurers known as the Insurance Services Offices. CGLs are divided into several components, including the insuring agreement, which sets the outer limits of an insurer's contractual liability, and the exclusions, which help define the shape and scope of coverage by excluding certain forms of coverage.

*Id.* (citations omitted) (quotation marks omitted).

Tennessee courts interpret insurance contracts using the same rules of construction that apply to other contracts. *Id.* at 305–06. Contract language should be given "its usual and ordinary meaning." *Id.* at 306 (quoting *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006)). Any ambiguity regarding the meaning of the contract must be construed against the insurer and in favor of the insured. *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993). Additionally, "[w]hen the insurance contract in question is a CGL, the insuring agreement should be construed before the exclusions to avoid confusion and error." *Travelers*, 216 S.W.3d at 306 (quotation marks omitted). Accordingly, the Court will first construe the insuring agreement, and then consider the exclusions.

### 1. The Insuring Agreement

The operative language of the relevant insuring agreement[3] provides as follows: "[Auto-Owners] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Auto-Owners] will have the right and duty to defend any 'suit' seeking those damages. . . ." (*See* Doc. 31-1 at 70; Policy § I.A.) "Property damage" is defined in relevant part as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (*Id.* at 89; § V.18.) Pretermitting for the moment the application of any exclusions, three of the losses alleged in the underlying complaint appear to fall within the coverage provided by the insuring agreement of the Policy.[4]

---

[3] The Policy provides two types of coverage, Coverage A and Coverage B. (Doc. 31-1 at 70, 76; Policy §§ I.A, I.B.) Coverage A covers bodily injury and property damage, and Coverage B covers personal injury and advertising injury. (*Id.*) The only coverage relevant to the Court's analysis is the property damage coverage provided under Coverage A.

[4] The Court need not, and does not, decide whether the reputational harms alleged in the underlying complaint fall within the insuring agreement's initial scope of coverage. *See*

5

### a. Damage to the Car Wash

Damage to the physical machinery of the car-wash unit clearly constitutes "property damage." (*Compare* Underlying Compl. ¶¶ 18, 20 (alleging that "the car wash was coming off its tracks" and that "one of the sensors that scans the vehicles has been misaligned or become damaged") *with* Doc. 31-1 at 70, 89; §§ I.A.1.a, V.18 (providing coverage for "damages because of [physical injury to tangible property]").) Auto-Owners does not appear to contest this point.

### b. Lost Profits Due to Loss of Use of the Car Wash

Lost income due to loss of use of the malfunctioning car wash would also appear to qualify under the plain meaning of the Policy's definition of "property damage." (*See* Doc. 31-1 at 70, 89; §§ I.A.1.a, V.18 (providing coverage for "damages because of [physical injury to tangible property, *including all resulting loss of use of that property*]") (emphasis added).) Auto-Owners argues, however, that these lost profits constitute pure economic loss, which does not fall within the scope of "physical injury to tangible property." (Doc. 34 at 20.) Auto-Owners cites the Tennessee Court of Appeals's decision in *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1 (Tenn. Ct. App. 1998), in which the court held that an architect's claims against a subcontractor for injuries stemming from the subcontractor's defective work—including, *inter alia*, loss of income and reputational injuries—did not "involve physical damage to tangible property," but rather "amount[ed] to economic losses stemming from [the subcontractor's] breach of contract." *Id.* at 11–12.

Auto-Owners's argument is unpersuasive. First, Auto-Owners's proffered interpretation would essentially read the "all resulting loss of use" clause out of the definition of "property damage." The Court finds it difficult to conceive of loss-of-use damages as anything *other* than

---

*Travelers*, 216 S.W.3d at 305 ("The duty to defend arises if even one of the allegations is covered by the policy.")

economic losses. *Cf. Gibson & Assocs., Inc. v. Home Ins. Co.*, 966 F. Supp. 468, 477 (N.D. Tex. 1997) (citing case law from numerous jurisdictions recognizing that while economic injuries ordinarily do not qualify as "property damage," such economic losses *do* constitute "property damage" when a CGL defines "property damage" to include "loss of use"). Notably, the *Standard Fire* decision does not discuss the loss-of-use clause in its analysis.

Second, the Tennessee Court of Appeals did not hold in *Standard Fire* that economic losses are categorically outside the insuring agreement's definition of "property damage." Instead, the court appears to have reached its determination that the specific economic-loss claims at issue were not covered after discussing and construing several of the exclusions of the policy. *See* 972 S.W.2d at 8 (explaining that economic losses are not covered "without some sort of physical injury to tangible personal property *that is not owned by the insured or that is not part of the insured's work*") (emphasis added); *id.* at 9–10 (discussing the "impaired property" exclusion); *id.* at 10–11 (discussing the "sistership" exclusion); *id.* at 11–12 (concluding, after analyzing these exclusions, that the architect's claims for economic losses were not covered).

While the claims at issue here may yet be excluded by one or more policy exclusions, the Court declines to hold that a claim for lost income as a result of loss of use of damaged property does not fall within the scope of "property damage" as defined by the Policy.

### c. Payments to Customers for Vehicle Damage

Finally, a straightforward reading of the insuring agreement would also seem to provide coverage for a claim for sums paid to customers because of damage to their cars. (*See* Doc. 31-1 at 70, 89; §§ I.A.1.a, V.18 (providing coverage for "damages because of [physical injury to tangible property]").) Damage to the cars certainly constitutes "physical injury to tangible property." (*See* Underlying Compl. ¶ 19 ("[T]he top brush was being driven down into vehicles

causing damage.").) And payments made to placate customers whose cars were damaged by a malfunctioning car wash would certainly seem to be made "because of" that "property damage." (*See* Doc. 31-1 at 70; § I.A.1.a.)

Auto-Owners argues these payments are not "property damage," but represent purely economic losses Evans voluntarily incurred by paying unknown third-parties for damage to their vehicles. Auto-Owners points out that Evans has not alleged that any of her tangible property was physically injured by the car wash, only that she lost intangible property (money) by reason of compensating others for physical injuries to their tangible property. Because none of these third parties have made claims against Miller, and because Evans's claim is not one for physical injury to her tangible property, Auto-Owners contends these payments are not covered under the insuring agreement.

Auto-Owners is correct that these payments represent economic, rather than tangible, losses, but it does not follow that a claim for these payments is not covered by the Policy. The insuring agreement states that Auto-Owners will defend Miller against suits seeking "damages *because of* . . . 'property damage.'" (*See id.* at 70; § I.A.1.a.) "Because of" is not defined in the Policy, so it must be given its ordinary meaning. *See Tenn. Farmers Mut. Ins. Co. v. Davis*, No. C.A. 37, 1987 WL 20188, at *2 (Tenn. Ct. App. Nov. 25, 1987). Webster's Dictionary defines "because of" to mean "by reason of" or "on account of." *Webster's Third New International Dictionary* 194 (1993). These definitions communicate the idea of a causal relationship; that something follows as a consequence of something else. It is not a stretch to conclude that

8
Case 1:15-cv-00212-CLC-CHS   Document 57   Filed 05/25/16   Page 8 of 15   PageID #: 1031

payments made by a business to cover damage to its customers' vehicles are made "on account of" the damage, or that these payments follow as a consequence of that damage.[5]

Indeed, numerous other courts have held that the phrase "because of . . . property damage" in the insuring agreement extends coverage for consequential damages arising in the wake of physical damage. *See, e.g.*, *Dewitt Constr. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1136 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Dec. 4, 2002) ("[I]ntangible economic injuries may result from physical injury to tangible property" and such injuries are recoverable if they flow directly from the property damage); *Nautilus Ins. Co. v. ABN-AMRO Mortgage Grp., Inc.*, No. CIV.A. H-05-2750, 2006 WL 3545034, at *6 (S.D. Tex. Dec. 8, 2006) ("The plain meaning of ["damages because of . . . property damage"] is that all damages caused by 'property damage' are covered by the policy."); *Minn. Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 182 (Minn. 1990) ("Damages which are causally related to covered 'property damage' should also be covered under the language of the policy."); *Federated Mut. Ins. Co. v. Concrete Units, Inc.,* 363 N.W.2d 751, 757 (Minn. 1985) ("[T]he most sensible reading of the . . . phrase, 'damages because of . . . property damage,' requires the insurer to pay all damages which are causally related to an item of 'property damage' which satisfies either of the policy's definitions [of property damage]."); *Marley Orchard Corp. v.*

---

[5] Auto-Owners's brief could be read to argue that Evans's voluntary decision to pay for the damage done by the car wash to its customers' cars so attenuates the causal link between the property damage and Evans's claim for damages that the claim falls outside the insuring agreement's coverage of "damages *because* of ... property damage." While the Court agrees causation is a matter of degree, "because of" is not a term of art, nor, so far as the Court is aware, does it connote any particular degree of causal proximation. The Court thinks the natural meaning of the phrase encompasses the payments at issue, as compensating customers for damage incurred while patronizing one's car wash would seem to be a veritable commercial necessity. But at the least, the term is ambiguous as to the strength of the causal link implied by the formulation "because of … property damage." Accordingly, the Court is obligated to construe the term in favor of the insured. See *Tata*, 848 S.W.2d at 650.

*Travelers Indem. Co.*, 750 P.2d 1294, 1297 (Wash. Ct. App. 1988) (holding that the language "damages because of . . . property damage" in a CGL provides coverage for "consequential damages; *i.e.*, damages causally related to the property damage").

Commentators also recognize that consequential damages flowing from "property damage" are covered under these policies. *See* 3 Jeffrey E. Thomas & Francis J. Mootz, III, *New Appleman on Insurance Law Library Edition* § 18.02 (2015) ("Because the insuring agreement refers to liability imposed "because of . . . property damage," an economic loss that causally follows from a direct physical injury to tangible property or a loss of use of tangible property is within the coverage of the CGL."); Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 7.06, at 786 (17th ed. 2014) ("A loss arising from 'property damage' is recoverable, whether or not the loss is itself tangible."); 2 Jeffrey W. Stempel and Erik S. Knutsen, *Stempel and Knutsen on Insurance Coverage* § 14.04, at 14-37–14-38 (4th ed. 2016) ("However, where economic loss occurs as a fairly traceable consequence of tangible physical injury, property damage coverage is available."); Scott C. Turner, *Insurance Coverage of Construction Disputes* § 6:22 (2d ed. 2015); Laurie Vasichek, Note, *Liability Coverage for "Damages Because of Property Damage" Under the Comprehensive General Liability Policy*, 69 Minn. L. Rev. 795, 818 (1984).

Auto-Owners has not cited the Court to any Tennessee law to the contrary. In fact, in *Standard Fire*, the court stated that economic losses are not covered "without some sort of physical injury to tangible personal property that is not owned by the insured or that is not part of the insured's work"—implying that when there *is* physical injury to tangible personal property that is not owned by the insured or that is not part of the insured's work, there *would be* coverage. *See* 972 S.W.2d at 8. While the *Standard Fire* court went on to conclude the

economic damages alleged in that case were excluded from coverage, it clearly did not establish a *per se* rule that economic losses are *never* covered under CGL policies.

Auto-Owners's final argument is that because neither Miller nor the State Plaintiffs were sued by any of the vehicle owners, Miller is not "legally obligated to pay" for damages because of physical injury to tangible property. (*See* Doc. 31-1 at 70; § I.A.1.a.) That is irrelevant. Auto-Owners also has "the right and duty to defend" Miller "against any 'suit' seeking those damages." (*Id.*) "Suit" is defined in relevant part as "a civil proceeding in which damages because of . . . 'property damage,' . . . to which this insurance applies are alleged." (*Id.* at 89; § V.21.) The underlying complaint can plausibly be read as seeking recovery of payments the State Plaintiffs made "because of" physical injury to their customers' tangible property. Given the procedural posture in which the Court treats this issue, the Court need not settle definitively whether Auto-Owners has a duty to defend Miller against this claim. It suffices to observe that a straightforward reading of the Policy does not, as a matter of law, foreclose the possibility that this claim gives rise to a duty to defend.

Accordingly, the Court concludes the State Plaintiffs' claim for recovery of payments made for vehicle damage, like the claims for damage to the car wash and lost profits from loss of use of the car wash, fall within the Policy's initial grant of coverage for "damages because of . . . 'property damage.'" (*See* Doc. 31-1 at 70; § I.A.1.a.)

### 2. The Exclusions

Having found that three of the claims alleged against Miller are within the outer bounds of the Policy's coverage, the Court now considers whether any exclusions apply to withdraw coverage for these claims.

####### a. Damages to the Car Wash

Auto-Owners points the Court to two exclusions that it believes apply to Evans's claim for damage to the car-wash unit: the "Your Work" exclusion and the "Your Product" exclusion. (Doc. 34 at 14–19.) These exclusions, commonly called "business risk" exclusions, "reflect the proposition that certain business risks 'are a normal, foreseeable and expected incident of doing business and should be reflected in the price of the product or service rather than as a cost of insurance to be shared by others.'" *Friel Luxury Home Constr., Inc. v. ProBuilders Specialty Ins. Co. RRG*, No. 09-CV-11036-DPW, 2009 WL 5227893, at *6 (D. Mass. Dec. 22, 2009) (quoting *Essex Ins. Co. v. Bloomsouth Flooring Corp.*, 562 F.3d 399, 407 (1st Cir. 2009)). The purpose of these exclusions is to limit coverage to "tort liability for physical damages to others," rather than providing coverage "for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained." 9 *Couch on Insurance* § 129:17 (3rd ed. 2015).

######## i. "Your Work" Exclusion

The "Your Work" exclusion excludes "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (Doc. 31-1 at 75; § I.A.2.l.) "Your work" is defined in relevant part in the Policy as "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations." (*Id.* at 90; § V.27.) The "products-completed operations hazard" essentially limits the scope of the exclusion to "property damage" that occurs away from the insured's premises and arises out of completed work. (*See id.* at 88–89; § V.17.) *See generally* 9 *Couch on Ins.* § 129:25 (explaining "completed operations" provisions.) For present purposes, this exclusion can be said to exclude claims for "property damage" to completed work performed

by the insured, when such damage arises out of that work and occurs away from the insured's premises.

Upon comparing the claims made against Miller to the requirements of the "Your Work" exclusion, the Court concludes the exclusion precludes coverage of Evans's claim for damage to the car wash. According to the allegations of the underlying complaint, Miller contracted to install "a fully functioning car wash" at Evans's service station in Cleveland. (Underlying Compl. ¶ 10.) The underlying complaint further alleges that after Miller finished installing the car wash and it had opened for business, the machinery started periodically coming off the rails. (*See id.* ¶¶ 37, 39.) The underlying complaint opines that as a result of one of these derailment episodes, a sensor became damaged, causing the top brush to be driven down into certain vehicles. (*Id.* ¶¶ 19, 20.)

These allegations satisfy the conditions of the exclusion. Miller's installation of the car wash constitutes work performed by the insured; the car-wash installation had been completed; the car wash sustained damage arising out of some aspect of the unit or its installation; and all of these events took place on the premises of Evans's service station. Any claim for damages to the car wash itself is thus excluded from coverage under the Policy.

ii.     **"Your Product" Exclusion**

Alternatively, the "Your Product" exclusion also applies. This provision excludes from coverage "'[p]roperty damage' to 'your product' arising out of it or any part of it." (Doc. 31-1 at 75; § I.A.2.k.) "Your product" is defined in relevant part as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [y]ou [or] [o]thers trading under your name." (*Id.* at 90; § V.26.)

"Courts have held that goods and products, as these terms are commonly used in the standard CGL policy, are 'some tangible or material units in which one trades.'" *Cincinnati Ins. Cos. v. Tenn. Log Homes, Inc.*, No. 1:05-CV-7, 2008 WL 2944914, at *8 (E.D. Tenn. July 25, 2008) (quoting *Paxton-Mitchell Co. v. Royal Indem. Co.*, 569 P.2d 581, 615 (Or. 1977). The "D&S IQ Soft Touch Automatic" car wash, manufactured by D&S Car Wash Equipment Company, and sold and installed by Miller, fits comfortably within this definition. (*See* Underlying Compl. ¶¶ 11–12.) Accordingly, physical damage to the car wash that arises out of the car wash is excluded from the Policy's coverage for "property damage," and thus, Evans's claim seeking recovery for damage to the car wash is precluded.[6]

---

[6] Auto-Owners's argument on the applicability of the "Your Product" exclusion is well-taken up to this point. (*See* Doc. 34 at 17–18.) The excursus that follows, however, is not. Auto-Owners goes on to advance the rather remarkable theory that the exclusion removes coverage for *all* damage "arising out of" the car wash or any part of it. (*See id.* at 18–19.) But this proposition fails to account for the plain language of the exclusion, which clearly indicates that the damage excluded is damage "*to* 'your product' arising out of it or any part of it." (Doc. 31-1 at 75; § I.A.2.k (emphasis added).)

Auto-Owners's reading would render the protection afforded by a CGL policy nearly illusory. Not only would the policy exclude ordinary "business risks," but it would also exclude "accidental injury to property or persons substantially caused by [the insured's] unworkmanlike performance," thereby "expos[ing] the [insured] to nearly limitless liabilities." *See Vernon Williams & Son Constr., Inc. v. Cont'l Ins. Co.*, 591 S.W.2d 760, 763–64 (Tenn. 1979) (quoting *Weedo v. Stone-E-Brick, Inc. and Penn. Nat'l Ins. Co.*, 405 A.2d 788, 791 (N.J. 1979)). Adopting Auto-Owners's position would contravene the very purpose of CGLs—to protect the insured from "the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other* than to the product or completed work itself." *See id.* at 764 (emphasis added) (quoting *Weedo*, 405 A.2d at 791).

The Court acknowledges that Auto-Owners is not without company in its plunge down this slippery slope. This Court has previously read the "Your Product" exclusion as if it excluded "property damage to your product [*or*] arising from it or any part of it." *See Cincinnati Ins. Cos. v. Tenn. Log Homes, Inc.*, No. 1:05-CV-7, 2008 WL 2944914, at *8–*9 (E.D. Tenn. July 25, 2008) ("The property damage in this case is therefore not damage 'to' [the insured's] product. [The "Your Product" exclusion] also applies . . . when the property damage 'arises out of it or any part of it.'" (citation omitted)). That conclusion was based on a line from an unpublished Tennessee Court of Appeals case that appears to have been taken out of context. *See Blake Indus., Inc. v. Gen. Agents Ins. Co. of Am.*, 2000 WL 1031054, *5 (Tenn. Ct. App.

14

### c. Remaining Claims

Auto-Owners has not argued that either of Evans's remaining claims—the claim for lost income as a result of the loss of use of the damaged car wash and the claim for recovery of payments made for vehicle damage caused by the damaged car wash—is barred by any of the Policy exclusions. The Court therefore declines to consider the issue.

## IV. Conclusion

Because Auto-Owners has failed to show that all of the claims alleged against Miller in the underlying complaint are unambiguously outside the scope of coverage provided by the Policy, and thus, has failed to establish as a matter of law that Auto-Owners has no duty to defend Miller against those claims, the Court will **DENY** Auto-Owners's motion for summary judgment (Doc. 33.)

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

July 27, 2000). *Blake* did hold that the insurance company "[wa]s not liable for any damages arising out of the completed work performed by [the insured]," but read in context, it is plain that this conclusion was based on the existence of a separate policy endorsement excluding damage included in the "products-completed operations hazard," not on the "Your Product" exclusion. *See id.*

The Court declines Auto-Owners's invitation to depart from the long-established understanding that the "Your Product" exclusion "is not meant . . . to exclude damages that are a result of injury to people or damage to other property caused by the insured's product." 3 Jeffrey E. Thomas & Francis J. Mootz, III, *New Appleman on Insurance Law Library Edition* § 18.03 (2015) (citing Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971)).